STATE OF MINNESOTA            DISTRICT COURT

COUNTY OF HENNEPIN          FOURTH JUDICIAL DISTRICT

---

Joseph Famiglietti,                      Court File No. _____

         Plaintiff,

v.                                             **SUMMONS**

[Olympus America Inc.],

         Defendant.

---

THIS SUMMONS IS DIRECTED TO OLYMPUS AMERICA INC.:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   BAILLON THOME JOZWIAK & WANTA LLP
   100 South Fifth Street, Suite 1200
   Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get

1

**EXHIBIT A**

legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: April 10, 2019

*/s/ Cassie C. Navarro*
Christopher D. Jozwiak
Bar No. 0386797
Cassie C. Navarro
Bar No. 0396376
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
*cjozwiak@baillonthome.com*
*cnavarro@baillonthome.com*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Joseph Famiglietti, | Court File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| Olympus America Inc., | |
| Defendant. | |

The Plaintiff, Joseph Famiglietti, for his Complaint against Defendant, states and alleges as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff is a natural person, who, at all relevant times, maintained a residence in the City of Minneapolis, County of Hennepin, State of Minnesota.

2. Defendant Olympus America Inc. ("Defendant") is a New York Corporation that markets and sells medical technologies, life sciences, and camera and audio products. Defendant is licensed and conducting business in the State of Minnesota.

3. At all times relevant, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of Minn. Stat. § 363A.01 *et seq.*

4. At all relevant times hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of Minn. Stat. § 181.931.

5. The acts alleged in this Complaint fall within the general subject matter jurisdiction of this Court.

6. Venue is proper in the County of Hennepin, State of Minnesota as the unlawful employment actions at issue occurred in the County of Hennepin, State of Minnesota.

1

## FACTS

7. Plaintiff began working for Defendant as a National Account Executive in July 2013. He excelled in the role, was frequently praised for his contributions to the growth of the company, and was well-regarded by his peers and clients.

8. Despite his success, Plaintiff struggled with the illegal and inappropriate behavior of his supervisor, Director of Sales, Brett Alt ("Alt").

9. Examples of Mr. Alt's conduct included frequently requesting that his subordinates—including Plaintiff—purchase marijuana for his use, berating Plaintiff for being unmarried and childless, and becoming intoxicated and sexually harassing female employees.

10. In late 2017, Plaintiff could no longer tolerate Mr. Alt's behavior and reported several complaints to his direct manager, Executive Director, Sales and Field Marketing, Katie Roseman ("Roseman").

11. Over the course of October 23 and 24, 2017, he told Ms. Roseman how Mr. Alt had repeatedly asked him and one of his colleagues to illegally purchase marijuana for Mr. Alt's personal use. He described how this made him uncomfortable and was having a serious effect on his mental health.

12. Plaintiff also described how Mr. Alt frequently drank alcohol to excess at client or company events and often sexually harassed female employees after becoming intoxicated, which included pressuring them to accompany him to his hotel room.

13. At the conclusion of their meeting, Ms. Roseman told Plaintiff to "get along" with Mr. Alt. She committed to looking into Plaintiff's complaints, but never followed up with him.

14. In December 2017, Plaintiff raised these same concerns with Aki Murata ("Murata"), Vice President of Sales & Marketing. Mr. Murata told Plaintiff he would discuss the issues with Ms. Roseman and get back to him.

15. Meanwhile, Plaintiff noticed other legal concerns in his department.

16. Plaintiff observed Defendant engage in discriminatory hiring practices because, according to Ms. Roseman, they needed "young females" at Defendant. Indeed, he witnessed Defendant pass up qualified and experienced individuals—who were all in their 40s and 50s—in favor of younger candidates with little to no experience.

17. Plaintiff reported these ageist practices to Mr. Alt, but Mr. Alt failed to do anything about it.

18. By the spring, neither Ms. Roseman nor Mr. Murata had done anything to address Plaintiff's reports of Mr. Alt's conduct.

19. On April 19, 2018, Plaintiff again told Ms. Roseman and Mr. Murata that Mr. Alt's conduct was having a significant effect on his mental wellbeing and asked the two for direction on how to proceed.

20. Instead of immediately addressing the issues, Mr. Murata responded that the three would "follow-up" when they were all in Colorado together two months later in June.

21. During the week of June 11 when Mr. Murata, Ms. Roseman, and Plaintiff were all in Colorado, Plaintiff again approached Mr. Murata with his concerns about Mr. Alt. Mr. Murata was unwilling to help and referred Plaintiff to Ms. Roseman once more.

22. Again Plaintiff sought out Ms. Roseman and spoke privately with her about Mr. Alt. He described how Mr. Alt continued to behave inappropriately and he shared several

complaints he had received from other employees about Mr. Alt's unwanted sexual advances and harassment.

23.     While Ms. Roseman declined to do anything about Plaintiff's complaints herself, she directed him to Human Resources Manager, Jill Fay ("Fay").

24.     Plaintiff arranged a meeting with Ms. Fay on June 22, 2018. He flew to Pennsylvania so the two could talk in person.

25.     Ms. Fay opened the conversation by explaining that Ms. Roseman had shared some of his concerns about Mr. Alt with her. Ms. Fay asked if it was true that Mr. Alt asked Plaintiff to purchase marijuana for his (Mr. Alt's) use. Plaintiff confirmed that Mr. Alt had done so and that there were other employees who witnessed this behavior. Plaintiff admitted to Ms. Fay that he was tentative about discussing the matter because he feared retaliation.

26.     Ms. Fay assured Plaintiff that he would not be retaliated against.

27.     Plaintiff also reported how Mr. Alt had misrepresented sales numbers and market share information to numerous employees of Defendant.

28.     Finally, Plaintiff reported how Mr. Alt had a long history of becoming intoxicated and sexually harassing female employees, including many of his subordinates. He substantiated his reports with copies of text messages showing some of the harassment, which Ms. Fay photographed for her own records.

29.     One of the text messages described how earlier that year, Mr. Alt told a female employee that she was "the star of the show last night," which was a reference to him masturbating while thinking of her.

30.     That same text message described how Mr. Alt had become intoxicated at a client event and put his arm around the woman, which she did not welcome.

31. The text messages also listed several dates and events Mr. Alt attended and either became disruptively drunk or used illegal drugs with other employees of Defendant.

32. Before Plaintiff was finished describing Mr. Alt's harassment and illegal conduct, Ms. Fay questioned Plaintiff on what he wanted to happen because of his reports.

33. Plaintiff responded that he didn't want to work in an environment where this sort of conduct was permitted.

34. Ms. Fay responded, "this could be enough," and abruptly ended the meeting.

35. Plaintiff followed-up with Ms. Fay several times after this meeting to check in and request time to provide additional information about Mr. Alt's sexual harassment and illegal activities. However, Ms. Fay was not interested in learning more. She also declined to provide information about what the company was doing to address his complaints.

36. On July 10, 2018, Mr. Alt sent a department-wide email congratulating Plaintiff on his five-year anniversary with Defendant and commending him for his numerous accomplishments during that time. He noted that Plaintiff has "managed and grown [Defendant's] business with Best Buy, Target and National Camera Exchange."

37. Mr. Alt went on to describe how despite declines in several of Defendant's historically key markets, Plaintiff "transformed" Defendant's business models with Best Buy and Target to adapt to these changes and grow sales, all the while developing and maintaining critical relationships with important personnel at National Camera Exchange.

38. Mr. Alt closed the email by wishing Plaintiff "many more years of continued success with Olympus!" Around this same time, Ms. Roseman confirmed that Plaintiff should renew his Minneapolis apartment lease so he could continue to maintain his relationships with his Minnesota accounts.

39. Despite Mr. Alt's glowing review of Plaintiff on paper, Mr. Alt continued to harass and manipulate Plaintiff almost daily. Plaintiff's health deteriorated to such an extent that on August 7, 2018, Plaintiff submitted a request for leave pursuant to the Family and Medical Leave Act ("FMLA") to attend to his health.

40. Even though Plaintiff worked with Defendant's third-party provider, CIGNA, to arrange the terms of his leave, Mr. Alt somehow learned Plaintiff planned to use FMLA. He called Plaintiff and suspiciously questioned him about taking the leave. Plaintiff disclosed that he was taking FMLA to deal with his anxiety.

41. Mr. Alt tried to solicit additional information from Plaintiff, but Plaintiff refused to provide more details about his private health situation.

42. On August 28, Ms. Fay sent Plaintiff a confidential memorandum notifying him that Defendant had concluded its investigation into his complaints of Mr. Alt's sexual harassment and other illegal conduct.

43. While she declined to provide information about any disciplinary action the company had taken against Mr. Alt, Ms. Fay stated "it does appear there are continuous improvement opportunities." Ms. Fay advised Plaintiff that the company encourages employees to "bring such matters to our attention at any time, without fear of any adverse action being taken against them for doing so" and to contact her if "any form of retaliation occurs."

44. Unfortunately, despite this alleged policy against retaliation, Defendant terminated Plaintiff less than 48 hours later on August 30, 2018.

45. Ms. Fay and Ms. Roseman called Plaintiff and reasoned they were firing him due to the "state of business." The separation agreement Defendant provided Plaintiff claims he was

terminated pursuant to a reduction in the workforce. However, this "reduction" included only two employees—Plaintiff and one other individual.

**COUNT I**
**RETALIATION IN VIOLATION OF**
**THE MINNESOTA WHISTLEBLOWER ACT**

Plaintiff re-alleges all preceding paragraphs of this Complaint.

46. The Minnesota Whistleblower Act ("MWA") states that "[a]n employer shall not discharge ... an employee ... because the employee ... in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law ...." Minn. Stat. § 181.932.

47. Plaintiff made protected reports to Ms. Fay about Mr. Alt's illegal behavior, including that Mr. Alt was possessing and consuming illegal drugs, which is a violation of law pursuant to Minn. Stat. § 152.01 *et seq.*

48. Defendant, by and through its managers and officials acting on its behalf, violated the MWA by retaliatorily terminating Plaintiff.

49. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

50. Minnesota law provides that an employee injured by a violation of the MWA may recover all damages recoverable at law, including reasonable attorneys' fees and punitive damages. Minn. Stat. § 181.935(a).

51. Because of Defendant's violation of the MWA, Plaintiff is entitled to the relief provided by statute.

## COUNT II
## REPRISAL IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

52. Defendant, by and through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq*. These practices include, but are not limited to, engaging in retaliatory conduct and terminating Plaintiff's employment because of Plaintiff's good faith opposition to and report of Mr. Alt's illegal and harassing behavior.

53. The unlawful employment practices complained of above deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee because of his protected conduct.

54. Defendant performed the unlawful employment practices complained of above intentionally and with malice or reckless indifference to the anti-retaliation laws that protect Plaintiff.

55. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT III
## RETALIATION IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

56. Plaintiff was an "eligible employee" pursuant to 29 U.S.C. § 2611.

57. Defendant, by and through its managers and officials acting on behalf of Defendant, and within the scope of their employment, retaliated against Plaintiff in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*

58. Plaintiff exercised his statutory rights provided by the FMLA by notifying Defendant he needed to take leave pursuant to the FMLA.

59. Defendant engaged in unlawful employment practices in violation of the FMLA when it retaliated against Plaintiff for exercising his statutory rights. These practices include, but are not limited to, engaging in retaliatory conduct and terminating Plaintiff's employment.

60. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the anti-retaliation laws that protect Plaintiff.

61. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

62. Defendant, through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment practices in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.* These practices include, but are not limited to, terminating Plaintiff and altering the terms and conditions of his employment because Plaintiff suffered from disabilities, had a record of disabilities, or Defendant perceived Plaintiff to be suffering from disabilities.

63.     Defendant failed to take all reasonable steps to prevent discrimination based on Plaintiff's disabilities, record of disabilities, or perceived disabilities.

64.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because he suffered from disabilities, had a record of disabilities, or was regarded as suffering from disabilities.

65.     The unlawful employment practices complained of above were intentional and Defendant performed them with malice and/or reckless indifference to the anti-discrimination laws that protect Plaintiff.

66.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

**PRAYER FOR RELIEF**

Therefore, Plaintiff requests that judgment be entered against Defendant for the following:

a.      Declaring that Defendant's acts or omissions described in this Complaint constitute violations of applicable federal and state laws which protect Plaintiff;

b.      Enjoining Defendant and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c.      Requiring Defendant to make Plaintiff whole for its adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

  d. That Plaintiff be awarded treble damages pursuant to the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq*;

  e. Plaintiff be reinstated his job or, in the alternative, be awarded front pay and monetary value of any employment benefits he would have been entitled as an employee for Defendant;

  f. Awarding Plaintiff attorneys' fees, costs, and disbursements pursuant to statute; and

  g. Granting other and further relief as the Court deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.**

Dated: April 10, 2019    /s/ *Cassie C. Navarro*
             Christopher D. Jozwiak
             Bar No. 0386797
             Cassie C. Navarro
             Bar No. 0396376
             *Attorneys for Plaintiff*
             BAILLON THOME JOZWIAK & WANTA LLP
             100 South Fifth Street, Suite 1200
             Minneapolis, MN 55402
             Telephone: (612) 252-3570
             Fax: (612) 252-3571
             cjozwiak@baillonthome.com
             cnavarro@baillonthome.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: April 10, 2019    /s/ *Cassie C. Navarro*
             Cassie C. Navarro